UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
DECAR PEDROZA and JOSHUA CADIZ

                Plaintiffs,     **COMPLAINT**

   -against-

NEW YORK CITY, LT JAMES A ARICO
NEW YORK CITY POLICE OFFICER
KNOWN AS JUNIOR and UNIDENTIFIED     **JURY TRIAL DEMANDED**
NEW YORK CITY POLICE OFFICERS.
                Defendant(s).
---------------------------------------------------------X

The plaintiffs, complaining of the defendants, by their attorney, FRED LICHTMACHER, ESQ., respectfully shows to this Court and alleges:

## JURISDICTION

1    Jurisdiction is founded upon the existence of a Federal Question.

2    This is an action to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to plaintiff by the Fourth, Thirteenth and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. § 1983.

3    Jurisdiction is founded upon 28 U.S.C. Sections 1331, 1343(3 & 4).

4    Venue is appropriate pursuant to 28 U.S.C. Sections 1391 (b) (1 & 2).

5    This Court has jurisdiction to hear plaintiffs' state claims pursuant to 28 U.S.C. Section 1367.

## PARTIES

6    That the plaintiffs, DECAR PEDROZA and JOSHUA CADIZ, are residents of Kings County in the City and State of New York.

7    That the plaintiff DECAR PEDROZA is an Hispanic female, and the plaintiff JOSHUA

CADIZ, is an Hispanic male.

8       Upon information and belief, that at all times hereinafter mentioned, the defendant, CITY OF NEW YORK, (NYC) was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and that at all times relevant defendants were acting for, upon, and in furtherance of the business of his employer and within the scope of his employment.

9       Upon information and belief, that at all times hereinafter mentioned, defendants LT JAMES A ARICO, NEW YORK CITY POLICE OFFICER KNOWN AS "JUNIOR" and UNIDENTIFIED POLICE OFFICERS were employed by the defendant, NYC, as members of its police department.

10      Upon information and belief, that at all times hereinafter mentioned, the defendant, NYC, its agents, servants and employees operated, maintained and controlled the NEW YORK CITY POLICE DEPARTMENT (NYPD), including all the police officers thereof.

11      The NYPD, is a local governmental agency, duly formed and operating under and by virtue of the Laws and Constitution of the State of New York and the commissioner of the NYPD is responsible for the policies, practices and customs of the NYPD as well as the hiring, screening, training, supervising, controlling and disciplining of its police officers and civilian employees and is the final decision maker for that agency.

12      This action arises under the United States Constitution, particularly under provisions of the Fourth, Thirteenth and Fourteenth Amendments of the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983 as well as pursuant to the common law of the State of New York.

13      Each and all of the acts of the defendants alleged herein were performed by the defendants,

acting as state actors acting under the color of law.

14	That the defendant New York City is vicariously liable for the tortious acts of the defendants performed within the scope of said defendants' employment.

15	That on or about March 19, 2005, two notice of claims were served on the Comptroller of the City of New York, on behalf of the plaintiffs and that as of this date plaintiffs' demand for payment has not yet been addressed by the defendants.[1]

16	That New York CPLR § 1601 does not apply pursuant to the exception provided by CPLR § 1602(1)(b).

17	That to date, no 50-h has been conducted as to plaintiff Pedroza.

18	That on May 9, 2005 a 50-h was conducted as to Cadiz.

19	That this cause of action is commenced within one year and ninety days of when this cause of action arose.

## STATEMENT OF FACTS

20	On February 18, 2005, plaintiff Decar Pedroza's husband. "JR" was taken into custody by defendants UNIDENTIFIED POLICE OFFICERS.

21	JR was allegedly a confidential informant providing information pertaining to drug dealers doing business in Brooklyn and he was allegedly taken into custody because drug dealers were made aware that he was informing on them and these same drug dealers knew where he lived..

22	JR was brought to a Motel on Queens Boulevard in Queens, New York.

---

[1] Decar Pedroza served a Notice of Claim as parent and guardian of her infant son Joshua Cadiz upon the Comptroller of the City of New York.  Cadiz has since reached majority and this suit is brought by him as an adult.

23     On February 22, 2005 defendants NEW YORK CITY POLICE OFFICER "JUNIOR" and UNIDENTIFIED POLICE OFFICERS came to plaintiffs' residence at 532 39th Street Apt 2R, Brooklyn New York and told the plaintiffs they had a message from JR, which was, in sum and substance, that JR wished to see his child JD, who is the 6 month old daughter of plaintiff Pedroza and JR.

24     Pedroza packed a baby bag with changes of clothing for her foster child Ariel, also an infant, as well as for JD, and the defendants took her to a motel in Queens where her husband was being held.

25     The defendants and Pedroza agreed she and the babies would go to see JR, and that afterwards, the defendants would return her and the babies to Pedroza's three children, who had remained in the apartment.

26     At the time, Pedroza had one minor child remaining in the apartment, plaintiff Cadiz, one mentally incapacitated son, Julio, and an adult son home on leave from the navy, Javier.

27     Pedroza was told that she would be taken home either late the evening of the 22nd or the following morning February 23, 2005.

28     Pedroza and the two infants spent the evening with JR and in the morning Pedroza was told by defendant LT JAMES A ARICO that she was free to leave but that she would have to leave her infant daughter JD with her husband.

29     JR was terminally ill, he had a recurring problem abusing narcotics, he had committed several acts of violence against Pedroza and he was not capable of taking care of the infant child.

30     Pedroza showed defendant NEW YORK CITY POLICE OFFICER "JUNIOR" marks on her arms from physical abuse JR had subjected her to, but he refused to allow her to leave with her

baby.

31    The defendants used the infant as leverage to force Pedroza to stay with her husband in order to keep their witness content and continuing to cooperate with their investigation.

32    The plaintiff Pedroza was forced to abandon her sons and stay with JR against her will.

33    From February 23 through February 25 of 2005, Pedroza was not allowed to call her three children and plaintiff Cadiz and his brothers knew nothing about what was happening to their mother and JD.

34    The police were made aware that the older son, Javier, who was in the Navy, would have to leave and rejoin his Navy unit shortly thereafter and the defendants were made aware that when Javier left, the responsibility for running the home was put on Cadiz, then only 17 years old.

35    Pedroza made attempts to escape with her baby JD but she was prevented from doing so by the defendants.

36    On or about February 24, 2005, several defendant Unidentified Police Officers from the 72nd precinct in Brooklyn presented at the plaintiffs' home and held plaintiff Cadiz and his brothers in the house while accusing them of crimes.

37    The defendants accused Cadiz and his brothers of kidnaping the infant foster child Ariel as they searched the house and questioned Cadiz and his brothers as to the whereabouts of the baby.

38    After the defendants left plaintiffs' residence, without taking Cadiz or his brothers into custody, social services, presented at the motel and took custody of Ariel.

39    On February 26, 2005, the three boys were contacted and told to come down to the police precinct to see their mother with whom they had no contact since she was detained by the

defendants.

40      Only the eldest son, Javier, was allowed to actually see Pedroza and a meeting took place in a restaurant with defendant officers present preventing Pedroza from leaving to return to her sons.

41      Pedroza was not allowed to see Cadiz or Julio, who were sent home.

42      Javier was given $100.00 by the defendants for him and his brothers who were running out of food and money.

43      Javier returned to his brothers, gave them the $100, and he returned to the navy on February 27, 2005 as his leave had ended.

44      From that date on, plaintiff Cadiz, still a minor, was forced to cook for and generally take care of his invalid brother, something he had never before done.

45      Cadiz was led to believe that angry drug dealers were going to come to the apartment looking for JR who was informing on them.

46      Cadiz wedged furniture under the front door to prevent the drug dealers from breaking in and he left windows open through the nights for escape routes for he and his brother.

47      Defendant LT JAMES A ARICO informed Pedroza that JR was being sent to Pennsylvania and that JD was being sent with him and that if she did not want to be separated from her daughter she had to go to Pennsylvania with JR.

48      On March 1, 2005, Pedroza, escorted by six defendant officers, including LT JAMES A ARICO, was brought back to the apartment where her sons were staying and she was allowed to get clothing for herself and the baby.

49      There were six defendant officers at the house because they knew of the grave danger to

the inhabitants of that house and therefore they traveled in a large group for their own protection.

50   Defendants knew plaintiff Cadiz had been subjected to danger for over a week and they had made no efforts to provide him with the same degree of protection they found necessary for themselves.

51   LT JAMES A ARICO told Cadiz and his incapacitated brother that the defendants were buying tickets for the two of them to go with Pedroza, JD and JR to Pennsylvania but Cadiz refused to go with the violent JR and he stayed in the Brooklyn apartment with his invalid brother.

52   Against Pedroza's vehement protests she was forced by the defendants to board a bus with JD and her violent, narcotic addicted and terminally ill husband.

53   JR was given money to live off of by the defendants who gave Pedroza no money for her and the baby.

54   LT JAMES A ARICO gave Cadiz $50.00, apparently to feed himself and his brother and Pedroza, JR and JD were put on a bus to Pennsylvania.

55   Upon arriving in Pennsylvania JR immediately began using narcotics in the presence of Pedroza and JD and threatening acts of violence against Pedroza who had no funds to use to return to Brooklyn with her daughter and no way to escape.

56   Cadiz was terrified that something was going to happen to him and his brother while they were alone in the house.

57   Cadiz was not told exactly where his mother was and when or if she would be returning home and Pedroza had no way of staying in touch with Cadiz.

58   The word that Cadiz was hearing on the street was that drug dealers already knew that JR was cooperating with the police, and the police were not protecting them at all.

59      On March 12, 2005, JR had run out of the money the defendants had given him, brought Pedroza and JD back to Brooklyn.

60      Upon returning to Brooklyn, Pedroza escaped with her children from JR to a location in Brooklyn.

61      During the entire time Pedroza was not allowed to return to her home and her children, no protection was ever provided for Cadiz by the defendants who overtly acknowledged the danger of drug dealers coming after JR and in particular, after JR in the house in which Cadiz was living while waiting for his mother to return.

62      JR died on or about May 10, 2005.

**AS AND FOR A FIRST CAUSE OF ACTION
ON BEHALF OF PLAINTIFFS
VIOLATION OF PLAINTIFFS' RIGHTS PURSUANT TO
42 U.S.C. § 1983 AND THE FOURTH AND FOURTEENTH
AMENDMENTS VIA FALSE ARREST**

63.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

64.     That the plaintiffs' rights have been violated under the Fourth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983, as made applicable to the states via the Fourteenth Amendment to the United States Constitution in that the plaintiffs were falsely arrested by the defendants.

65.     That the defendants confined the plaintiffs, in that plaintiffs were not free to leave, defendants intended to confine plaintiff, plaintiff were conscious of confinement, plaintiffs did not consent to confinement and confinement was not otherwise privileged.

66.     As a direct result of defendants' actions, plaintiff were deprived of rights, privileges and

immunities under the Fourth Amendment of the United States Constitution being more particularly plaintiffs' right to be free from arrest without probable cause.

67. That the said false arrests, were caused by the defendants, their agents, servants and employees, without any legal justification.

68. That plaintiff Pedroza's arrest was effected from February 23, 2005 until March 12, 2005.

69. That plaintiff Cadiz's arrest was for the period of time on February 24, 2005 when he was held in his home by members of the 72nd precinct.

70. That the said false arrests were caused by the defendants, without authority of the law and without any reasonable cause or belief that the plaintiffs were in fact guilty of crimes.

71. That all the defendants who knew of the false arrests and continued the unwarranted detention of the plaintiffs are liable to the plaintiffs via their failure to act pursuant to their affirmative duty to intervene.

72. That defendants UNIDENTIFIED NYPD OFFICERS who are supervisors within the defendants NYC's Police Department, who knew of the false arrest and continued to allow and/or order the illegal and unwarranted arrest of the plaintiffs and who either directly participated in the violation of plaintiffs' rights or who after learning of the violation failed to remedy the wrong are liable to the plaintiffs for the violation of their rights pursuant to the Fourth Amendment.

73. That by reason of the unlawful arrests, plaintiffs were subjected to an illegal confinement, they incurred emotional harms, humiliation, mental anguish, embarrassment, anxiety, and they were prevented from performing their necessary affairs of business and that they were otherwise injured.

74. That the plaintiffs were denied their fundamental right not to be arrested

without probable cause and their right to the equal protection of the law in part due to the fact that they are Hispanic.

75.     That by reason of the aforesaid, the plaintiffs have been damaged in a sum not to exceed ONE MILLION ($1,000,000.00) DOLLARS each, an award of punitive damages and that an award of attorney's fees is appropriate pursuant to 42 U.S.C. §1988.

**AS AND FOR A SECOND CAUSE OF ACTION
ON BEHALF OF PLAINTIFFS
VIOLATION OF THE PLAINTIFFS' RIGHTS PURSUANT TO 42 U.S.C. § 1983
AND THE PLAINTIFFS' RIGHT TO FAMILY INTEGRITY
THROUGH DENIAL OF THE PROCEDURAL AND SUBSTANTIVE PROTECTIONS
OF THE FOURTEENTH AMENDMENT**

76.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

77.     That the plaintiffs have a liberty interest in their family's integrity, which was interfered with by the defendants.

78.     That the procedures attendant upon that deprivation were constitutionally insufficient and virtually nonexistent.

79.     That the plaintiff Decar Pedroza was involuntarily separated from her children, without any process much less the process that was due to deprive her of her fundamental right to maintain her family's integrity.

80.     That the plaintiff Joshua Cadiz was involuntarily separated from his mother, without any process much less the process that was due to deprive him of his fundamental right to maintain his

family's integrity.

81. That the plaintiff Decar Pedroza was involuntarily separated from her children, without such separation serving any legitimate governmental interest shocks the conscience.

82. That the plaintiff Joshua Cadiz was involuntarily separated from his mother, without such separation serving any legitimate governmental interest shocks the conscience.

83. That the actions of the defendants shock the conscience in that the defendants exercised the power of the government without any reasonable justification in the service of a legitimate governmental objective.

84. That denying Joshua Cadiz the protection of his family when there existed an imminent, real, cognizable threat from dangerous members of organized crime shocks the conscience.

85. That the said deprivations of procedural and substantive due rights were effected by the defendants without authority of law and without any necessity to take the extreme measures taken and that such actions were conducted with malice, deliberate indifference and with an intent to inflict pain and suffering.

86. As a direct result of defendants' actions, plaintiffs were deprived of rights, privileges and immunities protected by the United States Constitution.

87. That by reason of the interference with the plaintiffs' right to their family's integrity, plaintiffs were harmed psychologically, they were humiliated, embarrassed, subjected to anxiety, they were subjected to various ongoing emotional harms, and they were otherwise harmed.

88. That by reason of the aforesaid, the plaintiffs have been damaged in a sum not to exceed

ONE MILLION ($1,000,000.00) DOLLARS, they are entitled to an award of punitive damages, and that an award of attorney's fees is appropriate pursuant to 42 U.S.C. §1988.

### AS AND FOR A THIRD CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF PEDROZA
### VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO
### 42 U.S.C. § 1983 AND THE THIRTEENTH
### AMENDMENT VIA INVOLUNTARY SERVITUDE

89.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

90.    That the plaintiff Pedroza's rights have been violated under the Thirteenth Amendment to the United States Constitution as made applicable to the states via the Fourteenth Amendment by the defendants via her being forced into involuntary servitude to her husband JR.

91.    That the defendants forced the plaintiff against her will to leave her home and three of her children to be with her husband, who was violent, drug addicted, verbally abusive and in so doing plaintiff was denied access to her children, Julio, Joshua and Javier.

92.    That the defendants intentionally, maliciously, recklessly and with deliberate indifference violated plaintiff's rights in order to facilitate their use of plaintiff's husband as an informant and the defendants acted with reckless disregard for the harms they were inflicting on the plaintiff and her family.

93.    That by reason of the aforementioned, plaintiff was harmed in that she was subjected to humiliation, embarrassment, anxiety, she was denied her right to maintain her family's integrity and she was subjected to various emotional harms, and she was otherwise harmed.

94.     That by reason of the aforesaid, the plaintiff has been damaged in a sum not to exceed ONE MILLION ($1,000,000.00) DOLLARS, that an award of punitive damages is appropriate and that an award of attorney's fees is appropriate pursuant to 42 U.S.C. § 1988.

### AS AND FOR A FOURTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFFS
### VIOLATION OF PLAINTIFFS' RIGHTS PURSUANT TO
### THE COMMON LAW OF THE STATE OF NEW YORK
### VIA FALSE IMPRISONMENT

95.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

96.     That the plaintiffs' rights have been violated pursuant to the law of the State of New York by a false imprisonment.

97.     That the defendants confined the plaintiffs, in that plaintiffs were not free to leave, defendants intended to confine plaintiffs, plaintiffs were conscious of confinement, plaintiffs did not consent to confinement and confinement was not otherwise privileged.

98.     As a direct result of defendants' actions, plaintiff were deprived of rights, privileges and immunities under the laws of the state of New York being more particularly plaintiffs' right to be free from arrest without probable cause.

99.     That the defendant NYC is vicariously liable to the plaintiff for the individual defendant's common law torts via the principle of respondeat superior

100.    That the said false arrests, were caused by the defendants, their agents, servants and employees, without any legal justification.

101. That plaintiff Pedroza's arrest was effected from February 23, 2005 until March 12, 2005.

102. That plaintiff Cadiz's arrest was for the period of time on February 24, 2005 when he was held in his home by members of the 72nd precinct.

103. That the said false imprisonments were caused by the defendants, without authority of the law and without any reasonable cause or belief that the plaintiffs were in fact guilty of crimes.

104. That the defendant NYC is vicariously liable for the tortious conduct of its agents and employees performed within the scope of their employment.

105. That by reason of the false imprisonments, plaintiffs were subjected to illegal confinements, they incurred emotional harms, humiliation, mental anguish, embarrassment, anxiety, and they were prevented from performing their necessary affairs of business and that they were otherwise injured.

106. That by reason of the aforesaid, the plaintiffs have been damaged in a sum not to exceed ONE MILLION ($1,000,000.00) DOLLARS each, an award of punitive damages and that an award of attorney's fees is appropriate pursuant to 42 U.S.C. §1988.

### AS AND FOR A FIFTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF
### NEW YORK STATE TORT CLAIM
### NEGLIGENT HIRING, TRAINING RETAINING

107. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein

108. That the defendant, NYC, was negligent, careless, reckless and deliberately indifferent in

hiring, retaining, improperly training and supervising, as and for its employee, the defendants in that the said defendants lacked the experience, deportment, ability and temperament to be employed by NYC, in that the defendant failed to exercise due care and caution in its hiring practices, and in particular, in hiring the defendants employees who lacked the mental capacity and the ability to function as an employee of NYC; failing to investigate the above-named defendants' background and in that NYC hired and retained as employees of the department individuals who were unqualified in that the defendants lacked the maturity, sensibility and intelligence to be employed when hired to be employees.

109.    That the defendant, NYC failed to train its employees to not arrest people without probable cause and to not deny individuals their rights because it may be convenient for them to do so when pursuing an investigation, and to otherwise act as reasonably prudent police officers; and in that NYC failed to give its employees proper instruction as to their deportment, behavior and conduct as representatives of their employer; and, in that the defendant NYC, its agents, servants and employees were otherwise reckless, careless, deliberately indifferent and negligent.

110.    That the aforesaid occurrences and resulting injuries to mind therefrom, were caused wholly and solely by reason of the negligence of the defendant NYC, its agents, servants and employees without any negligence on the part of the plaintiff.

111.    That by reason of the aforesaid, the plaintiffs were harmed and that they were subjected to humiliation, embarrassment, anxiety, and various emotional harms, and that they were otherwise harmed. That by reason of the aforesaid, the plaintiffs have been damaged in a sum not to exceed ONE MILLION ($1,000,000.00) DOLLARS and that an award of attorney's fees is appropriate

pursuant to 42 U.S.C. § 1988.

## AS AND FOR A SIXTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFFS
## NEW YORK STATE TORT CLAIM
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

112. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein

113. That the defendants are liable to the plaintiffs via having intentionally inflicted emotional distress upon the plaintiffs.

114. That the defendants conduct was extreme and outrageous, that they intended to cause extreme emotional distress on the part of Pedroza and that they disregarded a substantial probability of causing, severe emotional distress to Cadiz, that there is a causal connection between defendants conduct and injuries to the plaintiffs and in that the defendants' actions caused severe emotional distress to both the plaintiffs.

115. That the defendants intentionally inflicted emotional distress on the plaintiff Pedroza in threatening to take her baby from her and give the baby to her terminally ill, drug addicted and violent husband.

116. That the emotional distress defendants inflicted on Pedroza was intentional and was intended to manipulate her to abandon her other children and to make their informant a happier witness.

117. That said conduct inflicted emotional distress not only upon Pedroza but also upon Cadiz as well, who was subjected to not knowing where his mother was, if she was to return and with a

realistic fear that drug dealers who were out to get JR could do him violence.

118. That by reason of the aforesaid, the plaintiffs were harmed and that they were subjected to humiliation, embarrassment, anxiety, and various emotional harms, and that they were otherwise harmed. That by reason of the aforesaid, the plaintiffs have been damaged in a sum not to exceed ONE MILLION ($1,000,000.00) DOLLARS, that an award of punitive damages is appropriate and that an award of attorney's fees is appropriate pursuant to 42 U.S.C. § 1988.

### AS AND FOR A SEVENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO 42 U.S.C. § 1983 AND THE FOURTH AMENDMENT BY DEFENDANT NEW YORK CITY i.e., MONELL CLAIM

119. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

120. That the plaintiffs' rights have been violated under the Fourth, Thirteenth and Fourteenth Amendments to the United States Constitution by the defendant, NYC.

121. Defendant NYC and unidentified police officers who were supervisors and final decision makers, as a matter of policy and practice, have acted with a callous, reckless and deliberate indifference to plaintiffs' rights under the Constitution and laws of the United States, in that they failed to adequately discipline, sanction, train, retrain, supervise or otherwise direct police officers concerning the rights of citizens, thereby causing the defendant officer in this case to engage in the above-mentioned conduct.

122. Defendants NYC as well as unidentified police officers who were supervisors and final decision makers as a matter of policy and practice, have with deliberate indifference failed to

properly train, discipline, sanction and retrain police officers, despite their knowledge of the recurring problem of violations of the Constitutional rights of citizens by making false arrests and in so failing, the defendant NYC has caused, encouraged, condoned and allowed the defendants in this case, to engage in the aforementioned unlawful conduct without fear of consequences for their illegal acts which did cause the plaintiffs to be subjected to deprivations of their civil rights.

123.    That the defendant municipality, NYC, alerted to the possibility of numerous false arrests by its police officers, by repeated complaints of false arrests, exhibited deliberate indifference thereto in that it was obvious to NYC that there was a need for more and/or improved supervision of police officers in order to protect against constitutional violations and in spite of. repeated complaints of civil rights violations, there have been no meaningful attempts on the part of NYC to investigate or forestall further incidents.

124.    That by reason of the aforementioned, plaintiffs were humiliated, embarrassed, anxious, they were subjected severe emotional distress and they were otherwise harmed.

125.    That by reason of the aforesaid, the plaintiffs have been damaged in a sum not to exceed ONE MILLION ($1,000,000.00) DOLLARS and that an award of attorney's fees is appropriate pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, plaintiffs demand judgment against the defendants in the sum of ONE MILLION ($1,000,000.00) DOLLARS and punitive damages on the First Cause of Action, in the sum of one MILLION ($1,000,000.00)) DOLLARS and punitive damages on the Second Cause of Action; in the sum of ONE MILLION ($1,000,000.00) DOLLARS and punitive damages

on the Third Cause of Action; in the sum of ONE MILLION ($1,000,000.00) DOLLARS and punitive damages on the Fourth Cause of Action; in the sum of ONE MILLION ($1,000,000.00) DOLLARS on the Fifth Cause of Action; in the sum of ONE MILLION ($1,000,000.00) DOLLARS and punitive damages on the Sixth Cause of Action; and in the sum of ONE MILLION ($1,000,000.00) DOLLARS on the Seventh Cause of Action along with reasonable attorney's fees pursuant to 42 U.S.C. § 1988 on all causes of actions together with costs and disbursements of this action; a trial by jury of all issues involved in this complaint; and such other and further relief as this Court may deem just and proper under the circumstances.

Dated: May 20, 2005
       New York, New York

    FRED LICHTMACHER (FL-5341)
    Attorney for Plaintiff
    60 East 42nd Street Suite 2001
    New York, New York 10165
    (212) 922-9066

To:   Michael Cardozo
      Corporation Counsel City of New York
      100 Church Street
      New York, New York 10007