UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
DECAR PEDROZA and JOSHUA CADIZ

                                    Plaintiffs,            **THIRD AMENDED  COMPLAINT**
                                                               05 cv 4933 (GEL)

            -against-

NEW YORK CITY, LT JEROME A. ARICO,
DETECTIVE AGAPITO SOLER, LT RICHARD LeGRAND,
DETECTIVE WILLIAM WASSON and UNIDENTIFIED _____
NEW YORK CITY POLICE OFFICERS.              **JURY TRIAL DEMANDED**
_____
                                    Defendant(s).
--------------------------------------------------------X

        The plaintiffs, complaining of the defendants, by their attorney, FRED LICHTMACHER,

ESQ., respectfully show to this Court and allege:

## JURISDICTION

1        Jurisdiction is founded upon the existence of a Federal Question.

2        This is an action to redress the deprivation under color of statute, ordinance, regulation,

custom, or usage of  rights, privileges, and immunities secured to plaintiffs by the Fourth,

Thirteenth and Fourteenth Amendments to the Constitution of the United States pursuant to 42

U.S.C. § 1983.

3        Jurisdiction is founded upon 28 U.S.C. Sections 1331 and 1343(3 & 4).

4        Venue is appropriate pursuant to 28 U.S.C. Sections 1391 (b) (1 & 2).

5        This Court has jurisdiction to hear plaintiffs' state claims pursuant to 28 U.S.C. Section

1367.

## PARTIES

6        That the plaintiffs, DECAR PEDROZA and JOSHUA CADIZ, are residents of Kings

County in the City and State of New York.

7      That the plaintiff, DECAR PEDROZA is an Hispanic female, and the plaintiff, JOSHUA CADIZ, is an Hispanic male.

8      Upon information and belief, that at all times hereinafter mentioned, the defendant, CITY OF NEW YORK, (NYC) was and still is a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York, and that at all times relevant, defendants, LT JEROME A. ARICO,  DETECTIVE AGAPITO SOLER and UNIDENTIFIED POLICE OFFICERS were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

9      Upon information and belief, that at all times hereinafter mentioned, defendants LT JEROME A. ARICO, DETECTIVE AGAPITO SOLER and UNIDENTIFIED POLICE OFFICERS, were employed by the defendant, NYC, as members of its police department.

10     Upon information and belief, that at all times hereinafter mentioned, the defendant, NYC, its agents, servants and employees operated, maintained and controlled the NEW YORK CITY POLICE DEPARTMENT (NYPD), including all the police officers thereof.

11     The NYPD, is a local governmental agency, duly formed and operating under and by virtue of the Laws and Constitution of the State of New York and the commissioner of the NYPD is responsible for the policies, practices and customs of the NYPD as well as the hiring, screening, training, supervising, controlling and disciplining of its police officers and civilian employees and is the final decision maker for that agency.

12     This action arises under the United States Constitution, particularly under provisions of the Fourth, Thirteenth and Fourteenth Amendments of the Constitution of the United States, and under

federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983 as well as pursuant to the common law of the State of New York.

13      Each and all of the acts of the defendants alleged herein were done by the defendants, acting as state actors acting under the color of law.

14      That the defendant, New York City, is vicariously liable for the tortious acts of the defendants performed within the scope of said defendants' employment.

15      That on or about March 19, 2005, two notice of claims were served on the Comptroller of the City of New York, on behalf of the plaintiffs and that as of this date plaintiffs' demand for payment has not yet been addressed by the defendants.[1]

16      That New York CPLR § 1601 does not apply pursuant to the exception provided by CPLR § 1602(1)(b).

17      That on June 22, 2005 a 50-h was conducted as to plaintiff Pedroza.

18      That on May 9, 2005 a 50-h was conducted as to Cadiz.

19      That this cause of action is commenced within one year and ninety days of when this cause of action arose.


## STATEMENT OF FACTS

20      On February 18, 2005, plaintiff Decar Pedroza's husband. "JR" was taken into custody by defendants UNIDENTIFIED POLICE OFFICERS.

21      JR was allegedly a confidential informant, providing information pertaining to drug dealers

---

[1]      Decar Pedroza served a Notice of Claim as parent and guardian of her infant son Joshua Cadiz upon the Comptroller of the City of New York.  Cadiz has since reached majority and this suit is brought by him as an adult.

doing business in Brooklyn and he was allegedly taken into custody because drug dealers had been made aware he was informing on them and these same drug dealers knew where he lived..

22      JR was brought to a motel on Queens Boulevard in Queens, New York.

23      On February 22, 2005 defendants DETECTIVE AGAPITO SOLER and UNIDENTIFIED POLICE OFFICERS came to plaintiffs' residence at 532 39th Street Apt 2R, Brooklyn New York and told the plaintiffs they had a message from JR, which was, in sum and substance, that JR wished to see his child, JD, who is the 19 month old daughter of plaintiff Pedroza and JR.

24      Pedroza packed a baby bag with changes of clothing for her foster child Ariel, also an infant, as well as for JD, and she was taken to a motel in Queens where her husband was being held.

25      The defendants and Pedroza agreed she and the babies would go to see JR, and that afterwards, the defendants would return her and the babies to Pedroza's three children who remained in the apartment.

26      At the time, Pedroza had one minor child remaining in the apartment, plaintiff Cadiz, and one mentally incapacitated son, Julio,  and an adult son home on leave from the US Navy, Javier.

27      Pedroza was told that she would be taken home either late the evening of the 22nd or the following morning February 23, 2005.

28      Pedroza and the two infants spent the evening with JR, and in the morning, when Pedroza demanded to go home, she was told by defendant LT JEROME A. ARICO that she was free to leave, but that she would have to leave her infant daughter JD with her husband.

29      JR was terminally ill, he had a recurring problem abusing narcotics, he had committed several acts of violence against Pedroza and he was not capable of taking care of the infant child.

- 4 -

30     Pedroza showed defendant DETECTIVE AGAPITO SOLER marks on her arms from physical abuse JR had subjected her to, but he refused to allow her to leave with her baby.

31     The defendants used the infant as leverage to force Pedroza to stay with her husband in order to keep their witness content and continuing to cooperate with their investigation.

32     The plaintiff Pedroza was forced to abandon her sons and stay with JR against her will.

33     From February 23 through February 25 of 2005, Pedroza was not allowed to call her three children and plaintiff Cadiz and his brothers knew nothing about what was happening to their mother and JD.

34     The police were made aware that the older son, Javier, who was in the Navy, would have to leave and rejoin his Navy unit shortly thereafter and the defendants were made aware that when Javier left, the responsibility for running the home was put on Cadiz, then only 17 years old.

35     Pedroza made attempts to escape but she was prevented from doing so by the defendants.

36     On or about February 24, 2005, several defendant Unidentified Police Officers from the 72nd precinct in Brooklyn presented themselves at the plaintiffs' home and held plaintiff Cadiz and his brothers in the house while searching the home and accusing them of crimes.

37     The defendants accused Cadiz and his brothers of kidnaping the infant foster child Ariel, as they searched the house and questioned Cadiz and his brothers as to the whereabouts of the baby.

38     After the defendants left plaintiffs' residence, without taking Cadiz or his brothers into custody, Social Services, presented themselves at the motel and took custody of Ariel.

39     On February 26, 2005, the three boys were contacted and told to come down to the police precinct to see their mother with whom they had no contact since she was detained by the

defendants.

40      Only the eldest son, Javier, was allowed to actually see Pedroza and a meeting took place in a restaurant with defendant officers present preventing Pedroza from leaving to return to her sons.

41      Pedroza was not allowed to see Cadiz or Julio, who were sent home.

42      Javier was given $100.00 by the defendants for him and his brothers who were running out of food and money.

43      Javier returned to his brothers, gave them the $100, and he returned to the Navy on February 27, 2005 as his leave had ended.

44      From that date on, plaintiff Cadiz, still a minor, was forced to cook for and generally take care of his invalid brother, something he had never before done.

45      Cadiz was led to believe that angry drug dealers were going to come to the apartment looking for JR who was informing on them.

46      Cadiz wedged furniture under the front door to prevent the drug dealers from breaking in and he left windows open through the nights for escape routes for he and his brother.

47      Defendant LT JEROME A. ARICO informed Pedroza that JR was being sent to Pennsylvania and that JD was being sent with him and that if she did not want to be separated from her daughter, she had to go to Pennsylvania with JR.

48      On March 1, 2005, Pedroza and her daughter, escorted by six defendant officers, including LT JEROME A. ARICO, were brought back to the apartment where her sons were staying and she was allowed to get clothing for herself and the baby.

49      There were six defendant officers at the house because they knew of the grave danger to

– 6 –

the inhabitants of that house and therefore they traveled in a large group for their own protection.

50       Defendants knew plaintiff Cadiz had been subjected to danger for over a week and they had made no efforts to provide him with the same degree of protection they found necessary for themselves.

51       LT JEROME A. ARICO told Cadiz and his incapacitated brother that the defendants were buying tickets for the two of them to go with Pedroza, JD and JR to Pennsylvania, but Cadiz refused to go with the violent JR and he stayed in the Brooklyn apartment with his invalid brother.

52       Against Pedroza's vehement protests, she was forced by the defendants LT RICHARD LeGRAND and DETECTIVE WILLIAM WASSON to board a bus with JD and her violent, narcotic addicted and terminally ill husband.

53       JR was given money to live off of by the defendants who gave Pedroza no money for her and the baby.

54       LT JEROME A. ARICO gave Cadiz $50.00, apparently to feed himself and his brother, and Pedroza, JR and JD were put on a bus to Pennsylvania.

55       Upon arriving in Pennsylvania JR immediately began using narcotics in the presence of Pedroza and JD and threatening acts of violence against Pedroza who had no funds to use to return to Brooklyn with her daughter and no way to escape.

56       Cadiz was terrified that something was going to happen to him and his brother while they were alone in the house.

57       Cadiz was not told exactly where his mother was and when or if she would be returning home and Pedroza had no way of staying in touch with Cadiz.

58       The word that Cadiz was hearing on the street was that drug dealers already knew that JR

was cooperating with the police, and the police were not protecting them at all.

59     On March 12, 2005, JR who had run out of the money the defendants had given him,

brought Pedroza and JD back to Brooklyn.

60     Upon returning to Brooklyn, Pedroza escaped with her children from JR to a location in

Brooklyn.

61     During the entire time Pedroza was not allowed to return to her home and her children, no

protection was ever provided for Cadiz by the defendants, who overtly acknowledged the danger

of drug dealers coming after JR, and in particular, after JR in the house in which Cadiz was living

while waiting for his mother to return.

62     JR died on or about May 10, 2005.

**AS AND FOR A FIRST CAUSE OF ACTION
ON BEHALF OF PLAINTIFFS
VIOLATION OF PLAINTIFFS' RIGHTS PURSUANT TO
42 U.S.C. § 1983 AND THE FOURTH AMENDMENT
VIA FALSE ARREST**

63.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior

paragraphs with the same force and effect as is more fully and at length set forth herein.

64.    That the plaintiffs' rights have been violated under the Fourth Amendment of the

United States Constitution pursuant to 42 U.S.C. § 1983, as made applicable to the states via

the Fourteenth Amendment to the United States Constitution in that the plaintiffs were falsely

arrested by the defendants.

65.    That the defendants confined the plaintiffs, in that plaintiffs were not free to leave,

defendants intended to confine plaintiffs, plaintiffs were conscious of confinement, plaintiffs

did not consent to confinement and confinement was not otherwise privileged.

66.    As a direct result of defendants' actions, plaintiffs were deprived of rights, privileges and immunities under the Fourth Amendment of the United States Constitution being more particularly plaintiffs' right to be free from arrest without probable cause.

67.    That the said false arrests, were caused by the defendants, their agents, servants and employees, without any legal justification.

68.    That plaintiff Pedroza's arrest was effected from February 23, 2005 until March 12, 2005.

69.    That plaintiff Cadiz's arrest was for the period of time on February 24, 2005 while he was held in his home by members of the 72nd precinct.

70.    That said false arrests were caused by the defendants, without authority of the law and without any reasonable cause or belief that the plaintiffs were in fact guilty of crimes.

71.    That all the defendants who knew of the false arrests and continued the unwarranted detention of the plaintiffs are liable to the plaintiffs via their failure to act pursuant to their affirmative duty to intervene.

72.    That defendants UNIDENTIFIED NYPD OFFICERS who are supervisors within the defendants NYC's Police Department, who knew of the false arrest and continued to allow and/or order the illegal and unwarranted arrest of the plaintiffs and who either directly participated in the violation of plaintiffs' rights or who, after learning of the violation, failed to remedy the wrong are liable to the plaintiffs for the violation of their rights pursuant to the Fourth Amendment.

73.    That by reason of the unlawful arrests, plaintiffs were subjected to illegal confinements, they incurred emotional harms, humiliation, mental anguish, embarrassment, anxiety, and they

were prevented from performing their necessary affairs of business and that they were

otherwise injured.

74.     That by reason of the aforesaid, the plaintiffs have been damaged in a sum not to exceed

ONE MILLION  ($1,000,000.00) DOLLARS each, they are entitled to awards of punitive

damages, and that an award of attorney's fees is appropriate pursuant to 42 U.S.C. §1988.

**AS AND FOR A SECOND CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFFS**
**VIOLATION OF THE PLAINTIFFS' RIGHTS PURSUANT TO 42 U.S.C. § 1983**
**AND THE PLAINTIFFS' RIGHT TO FAMILY INTEGRITY**
**THROUGH DENIAL OF THE PROCEDURAL AND SUBSTANTIVE PROTECTIONS**
**OF THE FOURTEENTH AMENDMENT**

75.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior

paragraphs with the same force and effect as is more fully and at length set forth herein.

76.     That the plaintiffs have a liberty interest in their  family's integrity, which was

interfered with by the defendants.

77.     That the procedures attendant upon that deprivation were constitutionally insufficient

and virtually nonexistent.

78.     That the plaintiff Decar Pedroza was involuntarily separated from her children, without

any legal process, much less the process that was due to deprive her of her fundamental right to

maintain her family's integrity.

79.     That the plaintiff Joshua Cadiz was involuntarily separated from his mother, without

any legal process, much less the process that was due to deprive him of his fundamental right to

maintain his family's integrity.

80.     That the plaintiff Decar Pedroza was involuntarily separated from her children, without such separation serving any legitimate governmental interest, shocks the conscience.

81.     That the plaintiff Joshua Cadiz was involuntarily separated from his mother, without such separation serving any legitimate governmental interest, shocks the conscience.

82.     That the actions of the defendants shock the conscience in that the defendants exercised the power of the government without any reasonable justification in the service of a legitimate governmental objective.

83.     That denying Joshua Cadiz the protection of his family, when there existed an imminent, real, cognizable threat from dangerous members of organized crime, that the defendants were aware of, shocks the conscience.

84.     That the said deprivations of procedural and substantive due rights were affected by the defendants without authority of law and without any necessity to take the extreme measures taken and that such actions were conducted with malice, deliberate indifference and with an intent to inflict pain and suffering.

85.      As a direct result of defendants' actions, plaintiffs were deprived of rights, privileges and immunities protected by the United States Constitution.

86.     That by reason of the interference with the plaintiffs' right to their family's integrity, plaintiffs were harmed psychologically, they were humiliated, embarrassed, subjected to anxiety, they were subjected to various ongoing emotional harms, and they were otherwise

harmed.

87.     That by reason of the aforesaid, the plaintiffs have been damaged in a sum not to exceed

ONE MILLION ($1,000,000.00) DOLLARS each, they are entitled to awards of punitive

damages, and that an award of attorney's fees is appropriate pursuant to 42 U.S.C. §1988.

**AS AND FOR A THIRD CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF PEDROZA**
**VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO**
**42 U.S.C. § 1983 AND THE THIRTEENTH**
**AMENDMENT VIA INVOLUNTARY SERVITUDE**

88.     Plaintiff Pedroza repeats, reiterates and realleges each and every allegation contained in

the prior paragraphs with the same force and effect as is more fully and at length set forth

herein.

89.     That the plaintiff Pedroza's  rights have been violated under the Thirteenth Amendment

to the United States Constitution as made applicable to the states via the Fourteenth

Amendment, by the defendants forcing her into involuntary servitude to her estranged husband

JR and to the New York Police Department.

90.     That the defendants forced the plaintiff against her will to leave her home and three of

her children to be with her estranged husband, who was violent, drug addicted, verbally abusive

and  terminally ill, and in so doing plaintiff was denied access to her children, Julio, Joshua and

Javier.

91.     That the defendants intentionally, maliciously, recklessly and with deliberate

indifference violated plaintiff's rights in order to facilitate their use of plaintiff's husband as an informant and the defendants acted with reckless disregard for the harms they were inflicting on the plaintiff and her family.

92.     That by reason of the aforementioned, plaintiff was harmed in that she was subjected to humiliation, embarrassment, anxiety, she was denied her right to maintain her family's integrity and she was subjected to various emotional harms, and she was otherwise harmed.

93.     That by reason of the aforesaid, the plaintiff has been damaged in a sum not to exceed ONE MILLION ($1,000,000.00) DOLLARS, an award of punitive damages and an award of attorney's fees are appropriate pursuant to 42 U.S.C. § 1988.

**AS AND FOR A FOURTH CAUSE OF ACTION
ON BEHALF OF PLAINTIFFS
VIOLATION OF PLAINTIFFS' RIGHTS PURSUANT TO
THE COMMON LAW OF THE STATE OF NEW YORK
VIA FALSE IMPRISONMENT**

94.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

95.     That the plaintiffs' rights have been violated pursuant to the laws of the State of New York by a false imprisonment.

96.     That the defendants confined the plaintiffs, in that plaintiffs were not free to leave, defendants intended to confine plaintiffs, plaintiffs were conscious of confinement, plaintiffs did not consent to confinement and confinement was not otherwise privileged.

97.     As a direct result of defendants' actions, plaintiffs were deprived of rights, privileges

and immunities under the laws of the state of New York, being more particularly plaintiffs'

right to be free from arrest without probable cause.

98.    That the defendant NYC is vicariously liable to the plaintiffs for the individual

defendants'common law torts via the principle of respondeat superior.

99.    That the said false arrests, were caused by the defendants, their agents, servants and

employees, without any legal justification.

100.    That plaintiff Pedroza's arrest was effected from February 23, 2005 until March 12,

2005.

101.    That plaintiff Cadiz's arrest was for the period of time on February 24, 2005 when he

was held in his home by members of the 72nd precinct.

102.    That the said false imprisonments were caused by the defendants, without authority of

the law and without any reasonable cause or belief that the plaintiffs were in fact guilty of

crimes.

103.    That the defendant NYC is vicariously liable for the tortious conduct of its agents and

employees performed within the scope of their employment.

104.    That by reason of the false imprisonments, plaintiffs were subjected to illegal

confinements, they incurred emotional harms, humiliation, mental anguish, embarrassment,

anxiety, and they were prevented from performing their necessary affairs of business and that

they were otherwise injured.

105.    That by reason of the aforesaid, the plaintiffs have been damaged in a sum not to exceed

ONE MILLION  ($1,000,000.00) DOLLARS each, awards of punitive damages and an award

of attorney's fees are appropriate pursuant to 42 U.S.C. §1988.

## AS AND FOR A FIFTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF
## NEW YORK STATE TORT CLAIM
## NEGLIGENT HIRING, TRAINING and RETAINING

106.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior

paragraphs with the same force and effect as is more fully and at length set forth herein

107.    That the defendant, NYC, was negligent, careless, reckless and deliberately indifferent

in hiring, retaining, improperly training and supervising, as and for its employee, the defendants

in that the said defendant lacked the experience, deportment, ability and temperament to be

employed by NYC, in that the defendant failed to exercise due care and caution in its hiring

practices, and in particular, in hiring the defendant employees who lacked the mental capacity

and the ability to function as  employees of NYC; failing to investigate the above-named

defendants' backgrounds and in that NYC hired and retained as employees individuals who

were unqualified in that the defendants lacked the maturity, sensibility and intelligence to be

employed when hired to be  employees.

108.    That the defendant, NYC failed to train its employees to not arrest people without

probable cause and to not deny individuals their rights because it may be convenient for them to

do so when pursuing an investigation, and to otherwise act as reasonably prudent police

officers; and in that NYC failed to give its employees proper instruction as to their deportment,

behavior and conduct as representatives of their employer; and, in that the defendant NYC, its agents, servants and employees were otherwise reckless, careless, deliberately indifferent and negligent.

109.    That the aforesaid occurrences and resulting injuries to mind therefrom, were caused wholly and solely by reason of the negligence of the defendant NYC, its agents, servants and employees without any negligence on the part of the plaintiff.

110.    That by reason of the aforesaid, the plaintiffs were harmed and that they were subjected to humiliation, embarrassment, anxiety, and various emotional harms, and that they were otherwise harmed. That by reason of the aforesaid, the plaintiffs have been damaged in a sum not to exceed ONE MILLION ($1,000,000.00) DOLLARS each and that an award of attorney's fees is appropriate pursuant to 42 U.S.C. § 1988.

## AS AND FOR A SIXTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFFS
### NEW YORK STATE TORT CLAIM
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

111.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein

112.    That the defendants are liable to the plaintiffs via having intentionally inflicted emotional distress upon the plaintiffs.

113.    That the defendants conduct was extreme and outrageous, that they intended  to cause extreme emotional distress on the part of Pedroza and that they disregarded a substantial probability of causing, severe emotional distress to Cadiz, that there is a causal connection

-16-

between defendants conduct and the injuries inflicted on the plaintiffs and in that the defendants' actions caused severe emotional distress to both the plaintiffs.

114.    That the defendants intentionally inflicted emotional distress on the plaintiff Pedroza in threatening to take her baby from her and give the baby to her terminally ill, drug addicted and violent husband.

115.    That the emotional distress defendants inflicted on Pedroza was intentional and was intended to manipulate her to abandon her other children and to make their informant a happier witness.

116.    That said conduct inflicted emotional distress not only upon Pedroza but also upon Cadiz as well who was subjected to not knowing where his mother was, if she was to return and with a realistic fear that drug dealers could do him violence who were out to get JR.

117.    That by reason of the aforesaid, the plaintiffs were harmed and that they were subjected to humiliation, embarrassment, anxiety, and various emotional harms, and that they were otherwise harmed.

118.    That by reason of the aforesaid, the plaintiffs have been damaged in a sum not to exceed ONE MILLION ($1,000,000.00) DOLLARS each, that an award of punitive damages and an award of attorney's fees is appropriate pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, plaintiffs demand judgment against the defendants in the sum of ONE MILLION  ($1,000,000.00) DOLLARS each and punitive damages on the First Cause of Action, in the sum of ONE MILLION  ($1,000,000.00)) DOLLARS each and punitive damages on the Second Cause of Action; in the sum of ONE MILLION  ($1,000,000.00) DOLLARS for Pedroza and punitive damages on the Third Cause of Action; in the sum of

ONE MILLION ($1,000,000.00) DOLLARS each and punitive damages on the Fourth Cause

of Action; in the sum of ONE MILLION ($1,000,000.00) DOLLARS each on the Fifth Cause

of Action; and in the sum of ONE MILLION ($1,000,000.00) DOLLARS each and punitive

damages on the Sixth Cause of Action, along with reasonable attorney's fees pursuant to 42

U.S.C. § 1988 on all causes of actions together with costs and disbursements of this action; a

trial by jury of all issues involved in this complaint; and such other and further relief as this

Court may deem just and proper under the circumstances.


Dated: August 20, 2005
        New York, New York

                                     _____/s/_____

                                     FRED LICHTMACHER (FL-5341)
                                     Attorney for Plaintiff
                                     60 East 42nd Street Suite 2001
                                     New York, New York 10165
                                     (212) 922-9066


To:    Alison E. Gugel
       Assistant Corporation Counsel City of New York
       Attorney for Defendants
       100 Church Street
       New York, New York 10007
       212 788-9391